IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
-------------------------------------------------------------X
NANDA KUPPUSWAMY,

                             Plaintiff,

                -against-

ARKA LLC; 3LINES, LLC, d/b/a 3LINES
VENTURE CAPITAL and/or 3LINES VC;
3LINES ADVISORS LLC; TRINETRUM
GP, LLC; KRISHNA KUNAPULI; PALLAB
CHATTERJEE; and KAMALESH DWIVEDI,

                          Defendants.
-------------------------------------------------------------X

**COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF
AND DAMAGES**

Case No.: 23-cv-1526

JURY TRIAL REQUESTED

Plaintiff Nanda Kuppuswamy ("Plaintiff"), by his attorneys Pastore LLC, as and for his

Complaint against Defendants Arka LLC ("Arka" or "Company"), 3Lines, LLC, d/b/a 3Lines

Venture Capital and/or 3Lines VC ("3Lines"), 3Lines Advisors LLC ("Advisors"), TriNetrum GP,

LLC ("TriNetrum"), Krishna Kunapuli ("Kunapuli"), Pallab Chatterjee ("Chatterjee") and

Kamalesh Dwivedi ("Dwivedi") (Kunapuli, Chatterjee, and Dwivedi collectively referred to herein

as the "Individual Defendants," and Individual Defendants along with Arka, 3Lines, Advisors, and

TriNetrum collectively referred to herein as the "Defendants"), alleges as follows:

<u>**Nature of Claims**</u>

1.    This case involves fraudulent, unscrupulous, unfair and illegal business conduct

and trade practices by Defendants, four closely-held entities in the technology venture capital

and private equity space controlled by three individuals, whose business conduct was intended

to and did harm Plaintiff in Connecticut.

2.    Plaintiff respectfully asks this Court to hold Defendants accountable for their fraud,

unfair trade practices, and theft, to make Plaintiff whole, and to punish Defendants for their unfair trade practices and wrongful actions that harmed Plaintiff, a Connecticut citizen.

## Parties

3.      Plaintiff is an individual currently, and at all relevant times, residing at 78 Sheephill Road, Unit 1, in Riverside, Connecticut. As detailed more fully herein, Plaintiff has over 20 years of experience in the financial industry.

4.      Defendant Arka is a Colorado limited liability company with a principal place of business of 6295 Greenwood Plaza Blvd., Greenwood Village, CO 80111.[1] Upon information and belief, Individual Defendants (who reside in Colorado, Texas, and Georgia) are the only current Members of Arka, although it is possible that other individuals residing in Texas (Rajiv Roy and/or Hermant Elhence), Colorado (Sumanth Channabasappa), and/or Canada (Nick Nardi) are also Members of Arka.  Defendant Kunapuli is Arka's Founder, CEO, and Managing Director. Arka is the General Partner of the Orbit Fund, L.P., a Delaware limited partnership formed in 2022 ("Fund").

5.      Defendant 3Lines is a Colorado limited liability company, with a principal place of business at 3242 Windridge Circle, Highlands Ranch, CO 80126. Upon information and belief, Individual Defendants (who reside in Colorado, Texas, and Georgia) are the only Members of 3Lines, although an individual who resides in Texas (Rajiv Roy) has been identified as a "3Lines Senior Venture Partner" and another individual who resides in Colorado (Sumanth Channabasappa) has been identified as a 3Lines "Venture Partner." 3Lines was founded by Kunapuli, who is its Registered Agent, and has represented (including in documents that form the

---

[1] Arka's original principal place of business stated on its Articles of Organization was 3242 Windridge Circle, Greenwood Village, CO 80126.

basis for this lawsuit) that Defendant Kunapuli is its Managing General Partner and CEO, Defendant Dwivedi is 3Lines' President and General Partner, and Defendant Chatterjee is 3Lines' Chairman and General Partner. Pursuant to the definitions in Arka's Operating Agreement, 3Lines is an "Affiliate" (as defined below) of Arka. 3Lines is also the investment manager of the funds and special purpose vehicles ("SPVs") operated by 3Lines and its affiliates. Nick Nardi, the individual who resides in Canada, has been identified as a "Senior Advisor" to the funds and 3Lines' affiliates.

6.    Defendant Advisors is a Colorado LLC formed by Kunapuli on April 14, 2023, just after Individual Defendants held a secret meeting in March 2023 to wrongfully change the direction of the Fund and wrongfully oust Plaintiff, as complained of herein. Advisors' principal office street address is 6295 Greenwood Plaza Blvd., Greenwood Village, Colorado, and its mailing address is 3242 Windridge Circle, Greenwood Village, Colorado 80126. Upon information and belief, there are no Members of Advisors other than Kunapuli, who is a resident of Colorado. Upon information and belief, Advisors was formed for Kunapuli to receive his share of the Fund's "carry" through Arka, which would include portions of the carry and Arka shares wrongfully taken from Plaintiff, as complained of herein, and to shield Kunapuli's assets from Plaintiff. Pursuant to the definitions in the Arka Operating Agreement, Advisors is an "Affiliate" of Arka.

7.    Defendant TriNetrum is a Delaware limited liability company, formed by Individual Defendants, with the following registered agent in Delaware: National Registered Agents, Inc., 1209 Orange St., Wilmington, Delaware 19801. Upon information and belief, Individual Defendants (who reside in Colorado, Texas, and Georgia) are the only Members of TriNetrum. Upon information and belief, TriNetrum receives economic benefits from various funds and co-

investments operated by Individual Defendants, 3Lines, and Arka. Pursuant to the definitions in the Arka Operating Agreement, TriNetrum is an "Affiliate" of Arka.

8.     Defendant Kunapuli is a Founder, CEO, Managing Director, and a Member of Arka, residing at 3242 Windridge Circle, Greenwood Village, Colorado 80126. Pursuant to an Agreement between 3Lines and Plaintiff that in part forms the basis for this Complaint, Kunapuli is 3Lines' Founder, and Kunapuli has also described himself as 3Lines' Managing General Partner and CEO. Kunapuli is also the Founder of Advisors and, upon information and belief, a Member of TriNetrum. Pursuant to the definitions in Arka's Operating Agreement, which in part forms the basis for this Complaint, Kunapuli is an "Affiliate" of Arka.

9.     Defendant Dwivedi is a Director and Member of Arka and President of 3Lines, residing at 3920 Saint Elisabeth Square, Duluth, Georgia 30096. Pursuant to an Agreement between 3Lines and Plaintiff that in part forms the basis for this Complaint, as well based upon representations made by Dwivedi, Dwivedi is 3Lines' President and General Partner and Member. Upon information and belief, Dwivedi is a Member of TriNetrum. Pursuant to the definitions in Arka's Operating Agreement, which in part forms the basis for this Complaint, Dwivedi is an "Affiliate" of Arka.

10.     Defendant Chatterjee is the Chairman and a Member of Arka, residing at 5004 York Lane in Plano, Texas, 75093-3459. Pursuant to an Agreement between 3Lines and Plaintiff that in part forms the basis for this Complaint, Chatterjee is a Member of 3Lines and its Chairman. Upon information and belief, Chatterjee is a Member of TriNetrum. Pursuant to the definitions in Arka's Operating Agreement, which in part forms the basis for this Complaint, Chatterjee is an "Affiliate" of Arka.

**Jurisdiction and Venue**

11.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists because Plaintiff is a citizen of Connecticut and no Defendants or Members of the Defendant LLCs are citizens of Connecticut. By virtue of Defendants' wrongful conduct complained of in this Complaint, Plaintiff is not a member of any LLC that is a Defendant in this action, and upon information and belief there are no Members of Defendant LLCs that are citizens of Connecticut.

12.     Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §§ 42-110g(a) and 1391, because: a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants are subject to personal jurisdiction in this district, and Plaintiff resides in this district and has suffered ascertainable loss of money and loss of reputation by virtue of Defendants' unfair trade practices in this district.

**Statement of Claims**

13.      Plaintiff is a senior executive with over 20 years of experience in the financial services industry. Plaintiff co-authored "Marketing Alternative Investments," a book published b

14.     y McGraw Hill that is required reading for a Harvard Business School course titled "Starting a Private Investment Firm." Plaintiff has led investor relations for multiple asset managers, including Sandstone Capital, an over $1B hedge fund. Plaintiff is Founder and Managing Partner of an advisory firm for investment managers, and holds an M.B.A. from the Indian Institute of Management – Ahmedabad and a B. Tech. from the Indian Institute of Technology – Madras. Plaintiff is a Chartered Financial Analyst ("CFA") charterholder and a member of the CFA Society of Stamford, and resides in Connecticut.

15.     Defendants Kunapuli, Chatterjee, and Dwivedi recruited Plaintiff to join their venture capital business because Plaintiff is a well-known and well-regarded alternatives investment professional – hedge funds, private equity, and venture capital – with relationships and experience with institutional investors, including in Connecticut.

16.     Individual Defendants and Arka and 3Lines fraudulently induced Plaintiff to enter into a relationship that: (a) used Plaintiff to make money for Individual Defendants, with no intention of honoring their obligations to Plaintiff; (b) used Plaintiff's name and contacts and reputation to their own benefit, before wrongfully attempting to oust Plaintiff; (c) wrongfully attempted to deprive Plaintiff of his carried interest in the Fund, contractually secured to Plaintiff; (d) used Plaintiff's time, effort, and reputation to correct problems with other funds and other fund's investors, without compensation to Plaintiff, (e) wrongfully withheld a portion of management fees owed to Plaintiff; (f) wrongfully purported to oust Plaintiff from Arka; (g) wrongfully converted Plaintiff's vested and unvested equity interests in Arka; and (h) fraudulently continued to use Plaintiff's name and reputation to their own benefit and to Plaintiff's detriment, after improperly ousting Plaintiff from the Fund and from Arka.

### *Recruitment of Plaintiff and the November 2021 Agreement*

17.     Individual Defendants formed Arka on August 17, 2021 to manage and operate the Fund, formed to acquire interests in early-stage AI-enabled software and technology companies with revenue in the range of $1M to $12M in sectors that generate valuations of 10-20x multiples of sales at exit.

18.     In September 2021, Plaintiff was introduced to Individual Defendants, who then introduced Plaintiff to 3Lines and to Arka. Discussions and negotiations ensued through October 2021, including by telephone, Zoom, and email while Plaintiff was located in Connecticut (as well

as two in-person meetings - one in Denver with Kunapuli and Dwivedi on September 23, 2021 and one in Dallas with Chatterjee on September 29, 2021), after which Defendants offered Plaintiff to join Individual Defendants and 3Lines in connection with building the Fund.

19.     Plaintiff rejected Defendants' first offer because Plaintiff refused to agree to specific fundraising targets for the Fund and did not want to be a third-party marketer or even a pure fundraiser, given the challenges of marketing a fund with a limited verifiable investment track record of the principals, and due to unprofessional behavior by Defendants during the negotiations.

20.     On or about October 30, 2021, Plaintiff had a telephone call with Dwivedi, during which Dwivedi promised: "we will ensure there is adequate time and compensation" to make Plaintiff's "risk with 3Lines worthwhile."

21.     On October 31, 2021, Dwivedi emailed to Plaintiff: "With open heart and mind, I have disclosed everything to you and if you partner with us, you will have opportunity to take 3Lines to a new and a higher height with [Kunapuli]."

22.     On November 21, 2021, Individual Defendants apologized to Plaintiff for their unprofessional conduct, and negotiations resumed.

23.     Individual Defendants, 3Lines, and Arka promised that Plaintiff would start as a Partner and Chief Operating Officer of the Fund and, *based on his performance*, would be promoted to General Partner of the Fund. Thus, Defendants promised that if Plaintiff did his job well, he would be rewarded. This representation was made without the intention to honor it.

24.     While Plaintiff was being recruited, Individual Defendants understood that Plaintiff was located in Connecticut and had many connections in Connecticut that could prove valuable and result in investors in the Fund. In fact, many of Plaintiff's connections in Connecticut did, through Plaintiff's efforts and because of Plaintiff's reputation, invest in the Fund.

25.     When recruiting Plaintiff, including while Plaintiff was in Connecticut, Individual Defendants and 3Lines and Arka fraudulently misrepresented to Plaintiff critical issues, which misrepresentations were later repeated in sum and substance in marketing documents to prospective investors. For example, Individual Defendants and 3Lines and Arka misrepresented to Plaintiff that the Fund had or would have: (a) a minimum $30 million investment from an anchor group; (b) secured exits from investments from previous funds at a very high internal rate of return ("IRR") and high Multiple on Invested Capital ("MOIC"); (c) avoidance of any write-downs or write-offs of investors' prior investments; and (d) a very strong deal pipeline. None of those representations were fulfilled. Moreover, Individual Defendants and 3Lines and Arka made the first statement with the knowledge that it was patently false. Plaintiff now understands, but did not at the time, that the anchor group investors had made no such commitment. As to the other three issues, Individual Defendants, 3Lines and Arka did not deliver on those promises.

26.     When recruiting Plaintiff, Kunapuli reassured Plaintiff multiple times in October and November 2021 that a group of investors from the Dallas, Texas area who had had a recent investment exit would be the anchor group investing a minimum of $30 million in the Fund for themselves and other entities that invested alongside them. Kunapuli also told Plaintiff, regarding other previous investors who would invest in the Fund: "one group has sold real estate and is sitting on $100+ millions. One family has made a real estate exit worth several hundred millions. They really like us and are eager to give us the money." Similar representations were made by Chatterjee and Dwivedi during an interview call with Plaintiff (in Connecticut) and when Plaintiff met Chatterjee in Dallas in October/November 2021 and Kunapuli and Dwivedi in Colorado.

27.     When recruiting Plaintiff, Kunapuli promised Plaintiff several times between October 18, 2021 and November 18, 2021, on telephone calls, Google Meets, and during Zoom

meetings (when Plaintiff was in Connecticut) that Plaintiff would be provided with a *minimum* of three months' notice before any termination of Plaintiff. In fact, most of the foregoing representations by Kunapuli emphasized that 3Lines and Arka and Individual Defendants wanted Plaintiff to commit to staying with them and that there would be a *minimum one year of severance* should there be any reason for the parties to part ways, with Kunapuli even representing that Plaintiff could transition to a portfolio company in the event of termination.

28.     When recruiting Plaintiff, Individual Defendants and 3Lines and Arka promised Plaintiff several times between October 18, 2021 and November 18, 2021, on telephone calls, Google Meets, and during Zoom meetings (while Plaintiff was in Connecticut), as well as sporadically thereafter, that his "carried interest" in the Fund would be 10% of the Fund's profits (the Fund's "Carry"), to be increased to 14% of the Fund's Carry after Plaintiff was named "General Partner" of the Fund. Those promises were affirmed after Plaintiff joined the team, when Kunapuli represented to Plaintiff several times that there was "4% set aside for you when you become GP," referring to an additional 4% carried interest above Plaintiff's initial 10% carried interest in the Fund that, as described below, was memorialized in an agreement ("Carried Interest").

29.     Defendants made another offer to Plaintiff that the parties memorialized in a November 29, 2021 agreement signed by Plaintiff and Kunapuli on behalf of 3Lines, with signature lines for Chatterjee and Dwivedi also on behalf of 3Lines ("November 2021 Agreement").

30.     Although the November 2021 Agreement states that "[f]ormal legal Agreements will be completed in 90 days," no such Agreements were executed,[2] and the parties operated under the

---

[2] Only the Fund's limited partnership agreement, recognizing Arka as the Fund's General Partner, was signed by Arka.

express terms of the November 2021 Agreement for more than one year.

31.     The November 2021 Agreement appoints Plaintiff as a Partner and COO of the Fund. Notwithstanding that Chatterjee and Dwivedi did not sign the November 2021 Agreement, and notwithstanding that the November 2021 Agreement is incorrectly labeled as a "memorandum of understanding," the November 2021 Agreement is enforceable because it contains all essential terms agreed upon by the parties, and because no replacement or more formal documents with similar terms were ever executed, and because the parties operated for over one year under the November 2021 Agreement, with Plaintiff relying on the compensation he was to receive thereunder as he performed his various duties on behalf of the Fund and 3Lines.

32.     The November 2021 Agreement memorializes Plaintiff's 10% Carried Interest in the Fund, which Carried Interest was to vest in increments on November 2022, November 2023, November 2024, November 2025, November 2026, November 2027, November 2028, and November 2029.

33.     The November 2021 Agreement provides that Plaintiff would receive monthly cash compensation of $10,000 for the first 10 months (or until the Fund's first close), with annual compensation after the Fund's first close indexed to the total management fee.

34.     The November 2021 Agreement provides that Plaintiff was appointed "Partner/COO" of the Fund, with a key objective "to build" the Fund and the following initial goals: (a) accountable for Fund capital raise, and report to capital strategy team, and (b) responsible and accountable for various Fund operations, including direction of Fund administration and accounting team, investor reporting/relations, distribution management, transform value of the

---

on behalf of all limited partners at the time of their investments, including Plaintiff's investment in June 2022, and as explained more fully herein, an Arka operating agreement that did not address any of the terms of the November 2021 Agreement was executed approximately one year later.

portfolio companies, and grow the limited partner and operating partner networks.

35.     The November 2021 Agreement does not provide for any specific fundraising requirements to be met by Plaintiff.

36.     The November 2021 Agreement provides that once Plaintiff was notified that his role had increased to "General Partner" of the Fund (he was so notified, over one year later, in December 2022), Plaintiff would "work with the 3Lines Venture Capital to review the compensation structure and role after one year of start and before the final close."

37.     The November 2021 Agreement provides that Plaintiff "will invest a minimum of $100K" in the Fund, and Plaintiff did in fact invest $250K from his retirement account in June 2022, during the Fund's first close.

### Plaintiff's Diligence

38.     Plaintiff began diligently working on building the Fund, even before the November 2021 Agreement was signed, to show his goodwill. Relying on the terms of the November 2021 Agreement and the compensation that he was to receive thereunder, Plaintiff worked hard to fundraise, including through his connections in Connecticut, although as detailed below fundraising was substantially frustrated by Individual Defendants' failure to deliver on their promises to Plaintiff. Moreover, fundraising was only one of many functions performed by Plaintiff under the November 2021 Agreement, including directing administration, investor reporting/relations, distribution management, transforming the value of the portfolio companies, and growing the partner network. Plaintiff did it all so that he could reap the rewards of the Carried Interest and management fees owed to him under the November 2021 Agreement.

39.     On February 12, 2022, 3Lines issued a press release that Plaintiff had "joined 3Lines as a partner and Chief Operating Officer," with "over 20 years of experience leading strategic

initiatives across finance, investment management and investor relations" ("Press Release").

40.      Despite 3Lines' announcing to the public that Plaintiff had "joined 3Lines as a partner and Chief Operating Officer," Plaintiff was never provided with any 3Lines agreements.

41.      3Lines' Press Release stated that Plaintiff's "relationships with many growth focused investors in capital markets will help us in infusing new capital into existing high growth companies and also in generating non-linear wealth for our investors through our $100M Orbit Fund."

42.      Plaintiff is quoted in the Press Release as saying: "The track record of spotting technology trends early, a 90%+ proprietary deal flow, and the investment discipline to build a portfolio diversified across a range of technologies, industries and markets are hallmarks of an excellent manager. The results speak for themselves with a 600% revenue growth in the portfolio and one 4x gross exit within 2.5 years." Plaintiff later learned that the 4x exit he described, based on representations made to him by Individual Defendants, was wrong because the calculations had not excluded incentives paid to the management team of the company, and was not a true exit because the fund remained an investor in the acquired company, subject to investment risks not associated with exits. He also later learned that some of the growth numbers presented to him were incorrect, including revenue numbers from a company (on which Kunapuli sat on the Board of Directors) that had "cooked its books."

43.      The Fund was officially launched in March 2022, substantially due to Plaintiff's efforts. The Fund was pitched to investors as being formed to "acquire interests in early-stage AI-enabled software and technology companies with revenue in the range of $1M to $12M and *in sectors that generate valuations of 10-20X multiples of sales at exit*." The Fund's first close was on June 14, 2022, with a second close rolling from September through December 2022 and a third

close in March 2023.

44.     Many of the investors that Plaintiff brought to the Fund were Connecticut residents from Plaintiff's network in Connecticut. Several of those investors invested purely because of Plaintiff's reputation and because Plaintiff was part of the team, never speaking with anyone else at 3Lines before investing. Several investors that came through Individual Defendants' contacts also spoke to Plaintiff before they invested, illustrating the importance of Plaintiff's reputation and relationships to 3Lines, Arka, Individual Defendants, and TriNetrum.

45.     The Fund's marketing to investors noted that since 3Lines' founding in 2016, it had raised two funds: 3Lines Discretionary Fund LLC ("Fund I") and 3Lines Rocket Fund, L.P. ("Fund II"). Prospective investors were told that the new Fund would be launched "*with significant support from existing LPs.*" That misrepresentation mirrors the misrepresentations that Individual Defendants made to Plaintiff.

46.     Dwivedi called Plaintiff several times between April and August 2022 to complain about Kunapuli's historically not wanting to share the management fee with others, calling Kunapuli a "very greedy person" who was "ungrateful." Dwivedi claimed on those calls that he had "worked for 6 years" but hadn't "gotten a single penny from the fund," but reassured Plaintiff that because Plaintiff was going to "lead the company" with Kunapuli ("like Buffet and Munger"), he wanted to make sure that Plaintiff was "treated as an equal" to Kunapuli, "just like we allowed him to take all the money from the previous funds."

47.     In May 2022, in Montreal Canada, Kunapuli promised Plaintiff that he would be taken care of in the event of any separation, stating: "3Lines is a family. I see us building this company together. If something happens, 3Lines will ensure there is severance, however long it takes you to find a new role. With your experience, that wouldn't take time but whether it is 3

months, 6 months or one year, we will take care of it. At the worst, if we have to shut down, we can find a position for us in one of the portfolio companies."

48.     Dwivedi also assured Plaintiff during various conversations that Individual Defendants wanted Plaintiff to stay with the team for a long time, and that Plaintiff would "be taken care of."

49.     Fraudulent misrepresentations to induce Plaintiff to join 3Lines and build the Fund are partially reflected in the Fund's marketing materials to investors. For example, the private placement memorandum ("PPM") states that the Fund planned to invest in "a set of new opportunities from our pipeline," when there was no new investment for an entire year after the first close of the Fund, nearly two years after any new investment by the previous fund.

50.     The PPM provided to prospective investors represents that the launch was "with a focus on our existing investor network, Family Offices and Endowments," and that "current Fund II investors have indicated interest to invest in the Orbit Fund, *resulting in an expected $30 million from the overwhelming majority of our current LPs*."

51.     The PPM later provided to the Fund's prospective investors states that Plaintiff "joined as COO and Partner in December 2021 and was promoted to General Partner in December 2022."

52.     The PPM provided to prospective investors in Q1 2023 states that Plaintiff "will be added to the Investment Council in Q2," but that never happened.

53.     Plaintiff's efforts to fundraise were substantially frustrated by Defendants' failure to fulfill their promises to him (and to prospective investors, including in investor presentations made in November/December 2021) that there would be $30M from an anchor investment group and $20M from other investors in 3Lines' other funds. Nevertheless, through March 2023, Dwivedi

acknowledged Plaintiff's consistent effort and hard work fundraising in a very challenging environment, without any prompting and on multiple team calls.

54.     Kunapuli again promised Plaintiff repeatedly in Connecticut and at a meeting in Montreal on May 11, 2022, at a meeting in Austin on October 20, 2022, and during multiple phone calls in Connecticut, including earlier this year, that Plaintiff would be provided with a *minimum* of three months' notice before any termination of Plaintiff.

55.     As a direct result of Defendants' failure to fulfill their promises, the first close of the Fund was achieved in June 2022 with approximately $15M in commitments secured, far less than the $30M anticipated given Individual Defendants' assurances that there would be substantial contributions from the supposed "anchor group" and from existing limited partners in other funds.

### *The November 16, 2022 Arka OA and Plaintiff's December 2022 Promotion to "General Partner"*

56.     Approximately one year after Plaintiff began working for Individual Defendants and 3Lines and Arka and TriNetrum, Arka and Plaintiff executed a Limited Liability Company Agreement on November 16, 2022 ("OA"). Dwivedi signed as Arka's Managing Director, with signature lines for Chatterjee and Kunapuli as Arka Directors.[3] The OA recognizes Plaintiff as a Member.

57.     The OA states that "Polsinelli PC, has prepared this Agreement on behalf of and in its capacity as counsel for the Company."

58.     The OA provides that Arka's initial 3 Directors (Dwivedi, Kunapuli, and Chatterjee) are charged with managing Arka, and that each of Dwivedi, Kunapuli, and Chatterjee, as Directors

---

[3] On June 5, 2023, after the purported "termination" of Plaintiff later described herein, Kunapuli reassured Plaintiff that notwithstanding a "technical issue" that Docusign "voided" the OA because of Chatterjee's and Kunapuli's failure to sign, "we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year."

of the Company, "shall be an agent of the Company for the purpose of the Company's business and its affairs."

59.    The OA's definitions provide that 3Lines and 3Lines' "Affiliates" are "Affiliates," and defines "Affiliate" to mean any "Person[4] that directly or indirectly controls, is controlled by, or is under common control with, the Person in question and any partner, member, manager, officer or director of the Person in question." Accordingly, each of 3Lines, Advisors, TriNetrum, Kunapuli, Dwivedi, and Chatterjee are Arka "Affiliates."

60.    The OA provides that Plaintiff is a Member of Arka entitled to 10% of Arka's "Non-Voting Units," with said Units vesting on December 2022, December 2023, December 2024, December 2025, December 2026, December 2027, December 2028, and December 2029.

61.    The OA does not reference Plaintiff's rights under the November 2021 Agreement with 3Lines, does not address Plaintiff's roles and responsibilities operating and managing the Fund under the November 2021 Agreement, and does not address Plaintiff's entitlements to management fees or Carried Interest under the November 2021 Agreement. The OA simply grants Plaintiff a non-voting interest in Arka through shares vesting in increments from December 2022 through December 2029.

62.    The OA provides that the Arka Members "hereby adopt an 'incentive unit plan,'" but Plaintiff was never provided with Arka's incentive unit plan.

63.    Although the OA prohibits Members from receiving compensation for services when acting solely in their capacity as a Member, it expressly allows for a Member to receive compensation from the Fund, directly or indirectly.

64.    On December 19, 2022, Individual Defendants and 3Lines and Arka announced to

---

[4] "Person" is defined in the OA as "any natural person, partnership, limited liability company, corporation, association, cooperative, trust, estate, custodian, nominee or other individual or entity in its own or representative capacity."

the Fund team that Plaintiff had been officially promoted to the Fund's "General Partner." However, no official announcement was made, as is customary in the industry, and no new limited partnership documents were ever provided to Plaintiff or to the Fund's other investors.

65.     Later, after Plaintiff was promoted to the Fund's "General Partner," during an in-person meeting in Dallas, Plaintiff asked Chatterjee about the promised 4% increase in his Carried Interest, and Chatterjee told Plaintiff that Plaintiff's promotion to "General Partner" simply to leverage his "promotion" to market the Fund, suggesting a ploy by Individual Defendants who *never* intended to increase Plaintiff's Carried Interest an additional 4%, despite their multiple promises to Plaintiff that they would, which promises were relied upon by Plaintiff to his detriment as he continued to work for Defendants. These misrepresentations stand in direct contravention of the terms stipulated in the November 2021 Agreement providing that Plaintiff's elevation to General Partner and the corresponding increase in his Carried Interest were contingent only upon the Plaintiff's performance, which was excellent (particularly given the difficult circumstances and Individual Defendants' broken promises).

66.     Pursuant to the terms of the November 2021 Agreement that stated that Plaintiff would "work with the 3Lines Venture Capital to review the compensation" once Plaintiff was "notified to increase his role to be a General Partner," upon notifying Plaintiff that he was "General Partner" of the Fund the Defendants and Plaintiff agreed in December 2022 to payment of management fees to Plaintiff of $190,000 annually, which would increase again after the Fund's assets under management ("AUM") increased above $25M, which was reflected in a spreadsheet that Plaintiff created but was later unable to access (which spreadsheet should be produced by Defendants during discovery). The increased management fees were evidenced by a retroactive and pro-rata payment to Plaintiff on January 20, 2023.

67.     As part of his promotion to "General Partner," Plaintiff was supposed to join the Fund's investment committee, but that never happened.

68.     After Plaintiff's purported promotion to "General Partner," on a Zoom call in December with Individual Defendants to discuss economics, Plaintiff specifically asked that his Carried Interest increase to 14% be memorialized, but Individual Defendants tabled the discussion and refused to discuss.

### *After Plaintiff's Uncompensated Work Unearths Problems with Previous Funds, Defendants Drastically Change the Fund and "Terminate" Plaintiff*

69.     Throughout the time that he worked for Defendants, Plaintiff had been asked by Individual Defendants and TriNetrum and 3Lines to do work for TriNetrum's and 3Lines' other funds, which Plaintiff did without compensation. During that work, Plaintiff had discovered and corrected a number of issues.

70.     In the First Quarter of 2023, Individual Defendants asked Plaintiff to assist with certain serious problems relating to the other funds, which Plaintiff did – again without any compensation - and during that process Plaintiff identified serious issues that needed to be corrected.

71.     Some of Plaintiff's uncompensated work in 2023 involved 3Lines' investment in a company in India, which was later found to have engaged in flagrant and egregious corporate misconduct, despite Kunapuli being on the Board of that company. Plaintiff worked with forensic accountants and lawyers and helped manage investor relations to mitigate damage to investors in the funds and SPVs, 3Lines, TriNetrum, and Individual Defendants.

72.     Plaintiff also worked with accountants and Kunapuli – again without compensation – to ensure that 3Lines', TriNetrum's, and Arka's books and records were corrected and/or accurate.

73.     In spite of (or perhaps because of) Plaintiff's uncompensated efforts in 2023 to correct various issues and protect the reputations of Individual Defendants, 3Lines, Arka, and TriNetrum, Individual Defendants, in their individual capacities *and* in their capacities as Members of 3Lines, Arka, TriNetrum, and/or Advisors, plotted to "terminate" Plaintiff and deprive him of his economic rights.

74.     In March 2023,  Individual Defendants, individually and on behalf of Arka, TriNetrum, and 3Lines, secretly met to *drastically* change the Fund's strategy to focus on SPVs, which was *not* the focus of the Fund as stated to Plaintiff when he was being recruited or what had previously been marketed to investors. At that same meeting,  Individual Defendants, individually and on behalf of Arka and 3Lines and TriNetrum, agreed to wrongfully and unlawfully force Plaintiff out as a Member of Arka and deprive Plaintiff of his management role with the Fund and deprive Plaintiff of his Carried Interest and management fees under the November 2021 Agreement and Arka Units under the OA.

75.     After the secret meeting in March 2023, Chatterjee told Plaintiff, in the presence of Dwivedi, Kunapuli, and Nick Nardi, to stop actively marketing the Fund and to instead focus on SPVs.

76.     On April 14, 2023, Kunapuli created Advisors, which upon information and belief was formed to receive Kunapuli's share of the Fund's Carry, distributed through Arka, which funds (due to Defendants' wrongful conduct) will in part include Plaintiff's Carried Interest and amounts owed to Plaintiff pursuant to Plaintiff's misappropriated Arka Units.

77.     At the end of April and in early May 2023, just after Kunapuli created Advisors, Defendants breached the November 2021 Agreement by unilaterally reducing Plaintiff's annual management fees from $190,000 to $130,000 without justification, and breached the November

2021 Agreement by attempting to give all decision-making authority regarding the Fund to Individual Defendants and the 3Lines Board (Individual Defendants being the sole members of the 3Lines Board).

78.     In an effort to avoid some of the terms of the November 2021 Agreement, Defendants attempted to memorialize their unilateral changes by giving Plaintiff a new "memorandum of understanding" on April 23, 2023 "by and between Partners of Orbit Fund" that gave the 3Lines Board the "exclusive right to make changes to the Orbit Fund Fees Schedule." Plaintiff refused to sign the new "memorandum of understanding," which reflected Defendants' allocation to Plaintiff of 35.62% of the Fund's "fee distributions."[5]

79.     From May 15 to May 18, 2023, unaware of the secret plot to oust him, and despite the unjustified reduction in management fees, Plaintiff attended an investor conference on behalf of 3Lines and Arka in Dallas. Further, Plaintiff met with Chatterjee to discuss work (including updates on the conference and potential investor outreach).

80.     On May 18, 2023, unaware of the secret meeting to oust him, and despite the unjustified reduction in management fees, Plaintiff conducted a weekly capital strategy call with 3Lines, Dwivedi and Chatterjee.

81.     On May 20, 2023, unaware of the secret plot to oust him, and despite the unjustified reduction in management fees, Plaintiff traveled to Boston to meet an investor over the weekend.

82.     On numerous occasions in May, including on May 30, 2023, Plaintiff set up or approved wires to various vendors and service providers, for the benefit of Defendants.

83.     On May 31, 2023, at the request of Kunapuli (acting in his individual capacity and

---

[5] Notably, Defendants' providing Plaintiff with a proposed "memorandum of understanding" on April 23, 2023 regarding "distribution of fees" belies their later assertions, after "terminating" Plaintiff, that the OA was the only agreement governing the parties, and evidences their understanding that the November 2021 Agreement was in effect and enforceable.

on behalf of Arka, 3Lines, Advisors, and TriNetrum), Plaintiff traveled from Connecticut to Colorado, where Kunapuli told Plaintiff that he was being "terminated" as a "General Partner," but asking Plaintiff to continue on as an "advisor" to the Fund.

84.     Plaintiff distinctly recalls that at that meeting, Kunapuli remarked that "most of the *heavy work* for operations happens in the first year or so. From here it will be easy to continue with the service providers we have. I think we should be able to handle it from here on." This particular statement was troubling, underscoring to Plaintiff that now that he had personally set up the critical spreadsheets and templates for Defendants' future use, Defendants were ready to cut Plaintiff off from enjoying the fruits of his labor. This is a classic bad faith "bait and switch" by Defendants.

85.     Moreover, there was no mention of any "Cause Event" justification for the purported "termination" at the May 31, 2023 meeting. Clearly, Defendants were trying to have it both ways: deprive Plaintiff of his bargained-for and promised economic benefits under the November 2021 Agreement and OA, while attempting to continue to benefit from Plaintiff's strong reputation and connections by asking Plaintiff to continue serving as an "advisor" to the Fund. In other words, Defendants wanted all the benefits of Plaintiff's work, reputation and relationships without paying Plaintiff his agreed-upon compensation. Defendants had lied in order to receive these benefits.

86.     Pursuant to Kunapuli's offer to Plaintiff to stay on as an "advisor" to the Fund after he was "terminated" as a "General Partner," on June 1, 2023 (for his own benefit as well as on behalf of Arka, 3Lines, Advisors, and TriNetrum) Kunapuli emailed to Plaintiff in Connecticut a draft "separation agreement" purporting to be on behalf of Arka "and its affiliates," and purporting to terminate the Arka OA, while asking Plaintiff to perform similar services for the Fund that he had already been performing under the terms of the November 2021 Agreement. Plaintiff refused

to sign, pointing out that Defendants were violating the November 2021 Agreement *and* the OA *and* their promises to Plaintiff.

87.     On June 5, 2023, Kunapuli emailed Plaintiff in Connecticut letting him know that without all signatures the OA "was stuck for months and got voided" by Docusign, but promised Plaintiff: "[r]egardless of the technical issue, we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year."

88.     On June 7, 2023, Defendants removed Plaintiff's access to his 3Lines email account, although upon information and belief Defendants thereafter unlawfully used Plaintiff's 3Lines email account through at least September 2023 to send and/or receive emails to investors and prospective investors, without disclosing that Plaintiff had been forced off the Fund's team or that the emails were not from Plaintiff. Plaintiff received a call from a potential co-investor after Plaintiff had been "terminated," asking Plaintiff about a meeting that he was of course unaware of. This not only misled investors and potential investors, but also damaged Plaintiff's reputation, given that Plaintiff was no longer managing or operating the Fund and Defendants had drastically and unilaterally changed the focus of the Fund and truncated its fundraising.

89.     On June 28, 2023, Individual Defendants, TriNetrum, and Arka caused 3Lines to send a letter to Plaintiff falsely claiming that Plaintiff had "stopped providing services to the Fund as its Partner/Chief Operating Officer" on May 5, 2023 ("Termination Letter").

90.     The Termination Letter claims to "memorialize" Plaintiff's "Termination as Partner/Chief Operating Officer of the Fund as of May 31, 2023," and without justification under the OA states that Plaintiff's Membership with Arka "is terminated for Cause as of June 27, 2023."

91.     The Termination Letter wrongfully asserts that Plaintiff's unvested Arka Units were

"automatically forfeited as of June 27, 2023" because Plaintiff was purportedly being ousted from Arka due to a sham "Cause Event" under the OA, which "Cause Event" was never mentioned at the time of "termination" or when Plaintiff was asked to stay on as an "advisor." Further, it seems wholly contradictory to act as if said "Cause Event" had occurred and triggered a termination when Defendants had expressly invited Plaintiff to continue working as the Fund's advisor.

92.     The Termination Letter also wrongfully asserts that Dwivedi, Kunapuli, and Chatterjee were exercising supposed rights under the OA to purchase Plaintiff's 250 Arka Units that had already vested, which Individual Defendants falsely claimed to be of "negative" value.

93.     Finally, the Termination Letter fraudulently states that Arka and Individual Defendants would provide Plaintiff with "a final paying in the gross amount of $17,612.90," purportedly representing unpaid fees for services from January 1, 2023 through May 5, 2023, less an additional $6,000 per month purportedly paid to Plaintiff because of the false assertion that Plaintiff would "lead a fund raise of at least fifty million."[6] That, just as with the other sham assertions in the Termination Letter, was not true.

94.     The OA does not allow for termination of a Member other than upon a "Cause Event" defined as (a) an act or attempted act of theft, misappropriation, embezzlement or fraud with respect to any of the funds or property of the Company, the Fund, or 3Lines, or their respective Affiliates; (b) conviction of, or the entering of a guilty plea or plea of no contest with respect to, a violation of state or federal securities laws or regulations or other felony; (c) material breach of the OA; or (4) any willful action (or intentional failure to act) with respect to the Company, the Fund or 3Lines, or their respective Affiliates, that materially impairs the business, goodwill or reputation of the Company, the Fund or 3Lines or their respective Affiliates.

---

[6] Likely in an effort to avoid liability for the millions owed to Plaintiff, Defendants belatedly attempted to pay Plaintiff $17,612.90 on July 5, 2023, which was rejected by Plaintiff.

95.     The OA further provides that a "Cause Event" does not apply to any act or failure to act by a person who reasonably believed they were not acting opposed to the best interests of the Company, the Fund, 3Lines, or their respective Affiliates, as determined by a "written vote of a Majority in Interest in their sole discretion," but that clause cannot be invoked in bad faith, and doing so violates the implied duty of good faith and fair dealing. Moreover, ambiguity in the OA must be construed against its drafters (Individual Defendants, Arka, 3Lines, and TriNetrum).

96.     The Termination Letter asserts numerous lies and false pretenses to justify Defendants' ousting of Plaintiff from Arka and wrongful clawing back of Plaintiff's Arka Units and withholding of monies rightfully owed to Plaintiff, and seemingly ignores Plaintiff's entitlement to Carried Interest under the November 2021 Agreement.

97.     The Termination Letter wrongfully asserts that the November 16, 2022 Arka OA "contains our entire agreement relative to the operation and continuation of the Company (including the management and operation of the Fund)." The OA, executed one year after the November 2021 Agreement between 3Lines and Plaintiff, does no such thing and contains *none* of the material terms addressed in the November 2021 Agreement (including management fee compensation to Plaintiff and Plaintiff's Carried Interest and Plaintiff's roles and responsibilities managing and operating the Fund), dealing *only* with the membership and governance of Arka. Indeed, if Defendants had truly believed that the OA was the "entire agreement" governing not only Arka but also management and operation of the Fund, Defendants would not have presented Plaintiff with a purported "memorandum of understanding" on April 23, 2023 that in part attempted to change the terms of the November 2021 Agreement.

98.     The absurdity of the Termination Letter's claim that Plaintiff's vested Arka Units were of "negative" value is illustrated by Defendants' marketing the Fund, in presentations to

potential investors, showing a 5-7x return. Assuming that Defendants were not lying to investors (which would be serious violations of law), Plaintiff's 333 vested Arka Units, based on the Carry to Arka, are upon information and belief worth *at least* $1.5M, in an amount to be determined at trial and after a full accounting based on all applicable corporate books and records once they are produced by Defendants.

99.     Due to Defendants' wrongful "termination" of Plaintiff, Plaintiff was deprived of additional Arka Units due to vest each year from December 2023 through December 2029, upon information and belief worth *at least* $3.2M, in an amount to be determined at trial and after a full accounting based on applicable corporate books and records once they are produced by Defendants.

100.    Due to Defendants' wrongful "termination" of Plaintiff, and because Defendants cannot be trusted to pay Plaintiff his Carried Interest from the Fund's Carry or additional distributions pursuant to Plaintiff's Arka Units, Plaintiff should receive the value of his Carried Interest and of his Arka Units as if accelerated and fully vested.

101.    Defendants failed to deliver on their promises to Plaintiff, directly causing non-conversion of institutional investors that Plaintiff brought to the table.

102.    Defendants frustrated any ability Plaintiff had to continue providing the services for which he had been engaged under the November 2021 Agreement, by effectively truncating, in a surreptitious manner and without any consultation with Plaintiff, the fundraise nine months prior to the Fund's final close date.

103.    Individual Defendants and Arka and 3Lines wrongfully failed to communicate their drastic changes to the Fund to Plaintiff (and to other investors).

104.    Plaintiff is an investor in the Fund but never received documentation from Individual

Defendants, Arka, or 3Lines seeking informed consent to the major changes made by Individual Defendants, Arka, and/or 3Lines to the Fund's limited partnership agreement.

105.   Defendants have failed to proactively inform investors and prospective investors of Plaintiff's forced wrongful separation and other major changes to the Fund, which is irreparably damaging Plaintiff's reputation and adversely affecting Plaintiff's ability to obtain new work.

106.   Upon information and belief, Defendants engaged in similar misconduct and unfair trade practices with at least one other general partner of previous funds, and possibly another, demonstrating an intentional pattern of fraudulent conduct and unfair trade practices.

## COUNT I

**(Unfair Trade Practices in Violation of Conn. Gen. Stat. § 42-110a *et seq*.)**
**(Against Individual Defendants, Arka, 3Lines, and TriNetrum)**

107.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

108.   Defendants' actions, including of fraudulently inducing Plaintiff to use his connections (a significant portion of whom are in Connecticut) to raise money to benefit Individual Defendants, and to enter into the November 2021 Agreement (and, a year later, the separate OA) with no intention of honoring their promises and contractual obligations to Plaintiff, and intentionally and fraudulently frustrating Plaintiff's ability to fundraise, and intentionally and fraudulently using Plaintiff for Plaintiff's contacts and reputation even after supposedly and wrongfully terminating Plaintiff, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

109.   Defendants' unfair and oppressive actions, which include actions before Plaintiff signed the November 2021 Agreement and actions after purporting to oust Plaintiff as a Member of Arka, lie far outside the narrow confines of any possible employment relationship or the purchase and sale of securities, falling squarely under conduct prohibited by Conn. Gen. Stat. §

42-110a et seq. ("CUTPA").

110.    Some examples of Defendants' deceptive and unfair business practices that caused

Plaintiff to be fraudulently induced to work for Defendants, including without compensation, and

to put his reputation on the line and obtain investors (some in Connecticut) for Defendants before

being deprived of the contractual and/or promised economic fruits of his labor are:

- Misrepresentation by Individual Defendants and 3Lines and Arka and TriNetrum in November 2021 that the Fund would have a minimum $30 million investment from an anchor group, reflected in early presentations to prospective investors and in the PPM: "*an expected $30 million from the overwhelming majority of our current LPs,*" which Plaintiff later discovered was not true;

- Misrepresentation by Individual Defendants, 3Lines, Arka and TriNetrum in November 2021 that investors in previous funds had had secure exits with good IRRs and MOICs;

- Misrepresentation by Individual Defendants, 3Lines, Arka and TriNetrum in November 2021 that they would avoid any write-down or write-offs of prior investments, which Plaintiff later discovered did not happen;

- Misrepresentation by Individual Defendants, 3Lines, TriNetrum, and Arka in November 2021 that there was a strong deal pipeline for the Fund, in part reflected in the Fund's later marketing materials stating the Fund would invest in "*a set of new opportunities from our pipeline,*" when there was no new investment for an entire year;

- Misrepresentation in November 2021 that Plaintiff would not be required to meet specific fundraising goals, before Individual Defendants, 3Lines, and Arka "terminated" Plaintiff by falsely alleging on June 28, 2023 that there was "an understanding" that Plaintiff would lead a fund raise of at least $50M;

- Telling Plaintiff (and the public) that Plaintiff had "joined 3Lines as a partner and Chief Operating Officer," without providing Plaintiff with any 3Lines agreement;

- Announcing that Plaintiff had been promoted to "General Partner" of the Fund, when Plaintiff was never legally recognized as "General Partner" and was not on the investment committee, and when Plaintiff was later told by Chatterjee that his promotion to "General Partner" was "to leverage it for marketing the Fund":

- Telling Plaintiff that he would be on the "investment committee" when he was promoted to "General Partner," which never happened;

- Defendants' secret meeting in March 2023 where they colluded to change, without

notifying Plaintiff, the core strategy and very nature of the Fund's capital raise and to "terminate" Plaintiff;

- Formation of Advisors, on April 14, 2023, just after Defendants secretly decided to oust Plaintiff, upon information and belief for Kunapuli to receive his share (and a portion of Plaintiff's misappropriated Carried Interest and Arka Units) of the Fund's Carry through distributions from Arka, and upon information and belief to avoid liability to Plaintiff; and

- Assuring Plaintiff on June 5, 2023 that "[r]egardless of the technical issue, we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year," before on June 27, 2023 declaring a "Cause Event," clawing back Plaintiff's vested Units, converting Plaintiff's unvested Units, and valuing Plaintiff's Units as "negative."

111.    Defendants' aforementioned conduct was undertaken in the course of their trade or business of venture capital finance.

112.    Plaintiff has learned that at least one former 3Lines "partner," and perhaps another, was similarly treated by 3Lines and Individual Defendants, thus suggesting a pattern and practice of such unfair trade practices.

113.    Defendants' aforementioned conduct constitutes unfair or deceptive practices within the meaning of Connecticut General Statute § 42-110(b), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, and/or is substantially injurious to consumers, competitors, and/or other businesspersons.

114.    Defendants' aforementioned conduct caused substantial injury to Plaintiff that could not have reasonably been avoided and is not outweighed by any countervailing benefit to consumers, competitors, and/or other businesspersons.

115.    Defendants' unfair trade practices described herein were far outside the confines of any employment relationship or sale of securities.

116.    Accordingly, as a direct and proximate result of Defendants' CUTPA violations,

Plaintiff has suffered an ascertainable loss of money, in an amount to be determined at trial, in excess of $5.8M.

117.    Pursuant to Conn. Gen. Stat. § 42-110g(a), Plaintiff requests that punitive damages be awarded against Defendants and in favor of Plaintiff.

118.    Pursuant to Conn. Gen. Stat. § 42-110g(d), Plaintiff requests that Plaintiff's costs and reasonable attorneys' fees be awarded to Plaintiff.

119.    Pursuant to Conn. Gen. Stat. § 42-110g(g), Plaintiff requests a jury trial.

120.    Pursuant to Conn. Gen. Stat. § 42-110g(c), copies of this Complaint have been or will be delivered to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection of the State of Connecticut.

## COUNT II
### (Statutory Theft Conn. Gen. Stat. § 52-564)
### (Against Individual Defendants, Arka, and 3Lines)

121.    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

122.    Defendants' intentionally withholding management fees due and owing to Plaintiff under the November 2021 Agreement constitutes theft pursuant to Conn. Gen. Stat. § 52-564.

123.    Defendants' intentionally depriving Plaintiff of and/or attempting to terminate Plaintiff's Carried Interest under the November 2021 Agreement, due to vest from November 2023 through November 2029, with no basis for doing so constitutes theft pursuant to Conn. Gen. Stat. § 52-564.

124.    Defendants' intentionally clawing back and de-valuing Plaintiff's Arka Units that had already vested under the OA constitutes theft pursuant to Conn. Gen. Stat. § 52-564.

125.    Defendants' intentionally forcing Plaintiff from Arka to prevent the vesting of additional Arka Units constitutes theft pursuant to Conn. Gen. Stat. § 52-564.

126.     Accordingly, Plaintiff has been damaged by Defendants' theft of Plaintiff's property, in an amount to be determined at trial, in excess of $5.8M.

127.     Pursuant to Conn. Gen. Stat. § 52-564, Plaintiff is also entitled to treble damages.

**COUNT III**
**(Conversion)**
**(Against Individual Defendants, 3Lines, and Arka)**

128.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

129.     Individual Defendants intentionally and wrongfully took property belonging to Plaintiff, without authority or permission, including earned management fees owed under the November 2021 Agreement, Carried Interest under the November 2021 Agreement, vested Arka Units, and Arka Units that would have vested but for Defendants' wrongful conduct.

130.     Individual Defendants, Arka, and 3Lines, with the intent to deprive Plaintiff of his property and/or to appropriate same to themselves, wrongfully took approximately $5.8M (or another amount to be determined at trial, upon proper valuation based on all of Defendants' corporate books and records) from Plaintiff under false pretenses, in violation of Conn. Gen. Stat. § 53-564.

131.     Accordingly, Plaintiff is entitled to recover all of the amounts converted by Defendants, after proper valuation based on all of Defendants' corporate books and records, as well as punitive damages, in an amount to be determined at trial, in excess of $5.8M.

**COUNT IV**
**(Breach of Contract (November 2021 Agreement))**
**(Against 3Lines)**

132.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

133.     The November 2021 Agreement between Plaintiff and 3Lines is a valid and enforceable Agreement, containing all material terms of the parties' agreement.

134.    The November 2021 Agreement's terms reflect the parties' mutual assent and final meeting of the minds.

135.    Notwithstanding that the November 2021 Agreement states that more formal documents would be executed within 90 days, that never happened and the parties operated under/ratified the November 2021 Agreement by operating under its terms for more than one year.

136.    The November 2021 Agreement appoints Plaintiff as "Partner/COO" of the Fund, with monthly management fees of $10,000 for the first 10 months (or until the Fund's first close) and 10% Carried Interest of the Fund's Carry vesting through November 2029.

137.    The November 2021 Agreement does not provide for termination of Plaintiff.

138.    The November 2021 Agreement does not provide for any withholding of Plaintiff's management fees or Carried Interest.

139.    The November 2021 Agreement provides that if Plaintiff is notified to increase his role to be a "General Partner," the parties would work "to review the compensation structure and role after one year of start and before the final close," and indeed Individual Defendants and 3Lines promised Plaintiff that upon his promotion to "General Partner" Plaintiff's Carried Interest would increase to 14% and his management fees would increase to $190,000 per year.

140.    The November 2021 Agreement clearly contemplates a contractual term/vesting of Plaintiff's Carried Interest through November 2029.

141.    Plaintiff relied on the November 2021 Agreement by performing in good faith all of Plaintiff's duties set forth in the November 2021 Agreement, and was ready, willing, and able to continue to perform under the November 2021 Agreement, until 3Lines abruptly purported to terminate the November 2021 Agreement without any justification.

142.    3Lines breached the November 2021 Agreement by unilaterally reducing Plaintiff's

agreed-upon management fees from $190,000 to $130,000 in March 2023.

143.    3Lines breached the November 2021 Agreement by refusing to recognize and purporting to terminate Plaintiff's Carried Interest in the Fund, in violation of the November 2021 Agreement.

144.    3Lines breached the November 2021 Agreement by unilaterally changing the focus of the Fund to SVPs.

145.    3Lines breached the November 2021 Agreement by "terminating" Plaintiff on May 31, 2023.

146.    Under the November 2021 Agreement, and as announced by 3Lines and Individual Defendants, Plaintiff was made a "General Partner" and was thus entitled to the corresponding increase in his Carried Interest (the promised and additional 4%).

147.    Accordingly, Plaintiff has been damaged by 3Lines' breaches of the November 2021 Agreement, in an amount to be determined at trial, in excess of $5.8M.

**COUNT V**
**(Tortious Interference with Contract (November 2021 Agreement))**
**(Against Arka, Advisors, TriNetrum, and Individual Defendants)**

148.    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

149.    A contractual relationship existed between Plaintiff and 3Lines, as provided in the November 2021 Agreement.

150.    Kunapuli, Chatterjee, and Dwivedi control Arka and TriNetrum, and Kunapuli controls Advisors.

151.    Arka and Advisors and TriNetrum and Individual Defendants had knowledge of the contractual relationship between Plaintiff and 3Lines.

152.    Advisors was legally formed on April 14, 2023, soon after Defendants colluded to

oust Plaintiff and wrongfully deprive Plaintiff of his property. Upon information and belief, Advisors was formed in part for Kunapuli to receive his share of the Fund's Carry through distributions by Arka (which distributions would include funds belonging to Plaintiff, as alleged herein), and as a vehicle for Kunapuli to shield himself from liability to Plaintiff.

153.    Individual Defendants, Arka, Advisors, and TriNetrum colluded to intentionally and tortiously interfere with the November 2021 Agreement by causing 3Lines to terminate Plaintiff, who had been performing his work in Connecticut, and by causing 3Lines to fail to confer upon Plaintiff the Carried Interest and management fees owed to him under the November 2021 Agreement.

154.    Plaintiff was ready, willing, and able to perform under the November 2021 Agreement when it was wrongfully terminated.

155.    The actions of Individual Defendants and Arka and Advisors and TriNetrum were tortious, as detailed in Paragraphs 106 - 129 herein.

156.    The actions of Individual Defendants were not taken in their capacities as officers or directors or members of 3Lines, but as part of their fraudulent scheme to line their own pockets with money owed to Plaintiff.

157.    Kunapuli's tortious interference with the November 2021 Agreement was performed to benefit himself individually, and on behalf of sole-member Advisors which Kunapuli is believed to have formed to receive monies from Arka, and on behalf of Arka in his capacity as a Director and/or Officer, and on behalf of TriNetrum which he controls and is a Member.

158.    Chatterjee's tortious interference with the November 2021 Agreement was performed to benefit himself individually, and on behalf of Arka in his capacity as a Director, and on behalf of TriNetrum as its Member.

159.     Dwivedi's tortious interference with the November 2021 Agreement was performed on his own behalf, to benefit himself individually, and on behalf of Arka in his capacity as a Director, and on behalf of TriNetrum as its Member.

160.     The actions of Individual Defendants, Arka, Advisors, and TriNetrum to interfere with the November 2021 Agreement between Plaintiff and 3Lines were made in bad faith, and taken in part outside the legitimate scope of their authorities as Directors, Members, and/or Officers of Arka and/or 3Lines and/or TriNetrum.

161.     As a direct and proximate result of Individual Defendants' and Arka's and Advisors' and TriNetrum's unlawful interference with the November 2021 Agreement, Plaintiff has been damaged, in an amount to be determined at trial, in excess of $5.8M.

**COUNT VI**
**(Breach of Contract (OA))**
**(Against All Defendants)**

162.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

163.     A contractual relationship existed amongst Plaintiff, Arka, Individual Defendants, 3Lines, TriNetrum, and Advisors, as provided in the OA dated November 16, 2022 and pursuant to the definition of "Affiliates" in OA § II.1.

164.     To the extent that Kunapuli and Chatterjee may not have signed the OA, they ratified the OA by their actions and by operating under the OA for several months before purporting to oust Plaintiff from the OA by creating a sham "Cause Event." Moreover, Kunapuli assured Plaintiff in a June 5, 2023 email that "[r]egardless of the technical issue, we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year."

165.     The November 16, 2022 OA amongst Plaintiff and Defendants is a valid and

enforceable Agreement regarding the governance of Arka through its Members and Affiliates.

166.    The parties operated under the OA for several months before Individual Defendants unlawfully acted to unilaterally rescind the OA, oust Plaintiff as a Member of Arka, claw back and de-value Plaintiff's Arka Units, and deprive Plaintiff of additional vesting of Units.

167.    The OA, executed a year after the November 2021 Agreement, was not intended to replace the November 2021 Agreement and cannot replace the November 2021 Agreement, as the OA does not address Plaintiff's duties or responsibilities or management fee compensation or Carried Interest vis-à-vis the Fund.

168.    Defendants recognized that the OA was not intended to replace the November 2021 Agreement when they offered Plaintiff a proposed "memorandum of understanding" regarding "distribution of fees" on April 23, 2023 (which, of course, Plaintiff did not sign).

169.    The OA recognizes Plaintiff as a non-voting Member of Arka, and contemplates vesting of Arka Units, including Plaintiff's non-voting Units, through 2029.

170.    Kunapuli assured Plaintiff by email on June 5, 2023 that "we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year."

171.    The OA does not allow for termination of a Member other than upon a "Cause Event" defined as (a) an act or attempted act of theft, misappropriation, embezzlement or fraud with respect to any of the funds or property of the Company, the Fund, or 3Lines, or their respective Affiliates; (b) conviction of, or the entering of a guilty plea or plea of no contest with respect to, a violation of state or federal securities laws or regulations or other felony; (c) material breach of the OA; or (4) any willful action (or intentional failure to act) with respect to the Company, the Fund or 3Lines, or their respective Affiliates, that materially impairs the business, goodwill or

reputation of the Company, the Fund or 3Lines or their respective Affiliates.

172.    The OA further provides that a "Cause Event" does not apply to any act or failure to act by a person who reasonably believed they were not acting opposed to the best interests of the Company, the Fund, or 3Lines, or their respective Affiliates, as determined by a "written vote of a Majority in Interest in their sole discretion," but "sole discretion" clauses cannot be invoked in bad faith as doing so violates the implied duty of good faith and fair dealing.

173.    To the extent that the OA's description of a "Cause Event" is ambiguous, it must be construed against the drafters (Arka, 3Lines, and Individual Defendants).

174.    No "Cause Event" occurred under the OA for termination of Plaintiff, as is evidenced by the fact that no "Cause Event" was discussed with Plaintiff during his "termination" meeting with Kunapuli, and the fact that Defendants offered for Plaintiff to continue to work for Defendants as an "advisor." Moreover, to the extent that Defendants *later* claimed that they exercised their discretion to determine a "Cause Event," said discretion was obviously exercised in bad faith and in violation of the implied duty of good faith and fair dealing, in violation of the OA and of the fiduciary duties Defendants owed to Plaintiff.

175.    The lack of a "Cause Event" is confirmed by Kunapuli's June 1, 2023 email to Plaintiff seeking for Plaintiff to engage with Defendants in an advisory capacity, and in Kunapuli's June 5, 2023 email acknowledging Plaintiff's vested Arka Units without any attempted clawback.

176.    Defendants breached the OA by purporting to claw back Plaintiff's vested Arka Units and by determining they were of "negative" value.

177.    Defendants breached the OA by asserting that a sham "Cause Event" justified their ouster of Plaintiff as a Member of Arka.

178.    Plaintiff was ready, willing, and able to perform under the OA when he was

purportedly terminated.

179.     Plaintiff's actions were at all times made in good faith and in a manner reasonably believed by him to be within the scope of authority granted to him under the OA and in the best interests of Arka. No acts, omissions or errors in judgment by Plaintiff constituted gross negligence or willful misfeasance. Accordingly, not only was the "termination" of Plaintiff a breach of the OA by Defendants, but pursuant to OA § V.2 Arka must indemnify Plaintiff to the fullest extent permitted under the OA and applicable law, and Plaintiff is entitled to his attorneys' fees and costs in this action resulting from Defendants' breaches of the OA.

180.     Accordingly, Plaintiff has been harmed by Defendants' breaches of the OA, in an amount to be determined at trial, in excess of $5.8M

**COUNT VII**
**(Breach of Fiduciary Duty)**
**(Against Individual Defendants)**

181.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

182.     As majority members or managers of Arka, a limited liability company, Individual Defendants owed fiduciary duties of good faith and fair dealing and loyalty to Plaintiff, a minority Member of Arka.

183.     Kunapuli, on behalf of Individual Defendants and 3Lines and Arka, promised Plaintiff on June 5, 2023 to "honor the operating agreement" and acknowledged Plaintiff's vested Arka Units: "250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year."

184.     Individual Defendants breached their fiduciary duties owed to Plaintiff by secretly meeting and agreeing to "terminate" Plaintiff as a Member in violation of the OA and on fabricated "Cause Event" grounds, wrongfully clawing back and de-valuing Plaintiff's vested Arka Units, wrongfully depriving Plaintiff from the additional vesting of Arka Units, and ignoring/attempting

37

to terminate Plaintiff's Carried Interest in the Fund under the November 2021 Agreement.

185.    Accordingly, Plaintiff has been harmed by Individual Defendants' breaches of fiduciary duty, in an amount to be determined at trial, in excess of $5.8M.

## COUNT VIII
### (Fraudulent Misrepresentation and Inducement)
### (Against Individual Defendants, Arka, TriNetrum, and 3Lines)

186.    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

187.    As members and/or managers of Arka, Individual Defendants owed the traditional fiduciary duties of honesty, loyalty, and care to Plaintiff.

188.    As contracting parties with Plaintiff, Arka and 3Lines owed Plaintiff a duty of good faith and fair dealing.

189.    In connection with inducing Plaintiff to join their venture capital team and build the Fund, Individual Defendants individually, and Arka, 3Lines, and TriNetrum through Individual Defendants, made misrepresentations to Plaintiff, detailed in part in Paragraphs 22-48 herein, which they knew to be false.

190.    Individual Defendants' statements to Plaintiff, individually and on behalf of Arka and 3Lines and TriNetrum, were knowing misrepresentations of material fact designed to induce Plaintiff to join their venture capital team and work to grow the Fund before they would wrongfully oust Plaintiff after he had served his purpose, depriving Plaintiff of the fruits of his labor.

191.    Plaintiff relied on the afore-mentioned misrepresentations by lending his substantial credentials and reputation to help grow the Fund, investing in the Fund, traveling to grow the Fund, using his network (including in Connecticut) to bring investors to the Fund, and assisting with hours upon hours of uncompensated work in connection with issues relating to Defendants' other funds.

192.     There was no practical way for Plaintiff to have discovered, through reasonable diligence, the misrepresentations.

193.     Accordingly, through his reliance on Arka's, 3Lines', TriNetrum's, and Individual Defendants' material misrepresentations, Plaintiff has been damaged as a direct and proximate result, in an amount to be determined at trial, in excess of $5.8M.

194.     Plaintiff also seeks recovery of reasonable attorneys' fees and punitive damages against Individual Defendants, Arka, TriNetrum and 3Lines.

**COUNT IX**
**(Negligent Misrepresentation)**
**(Against Individual Defendants, Arka, TriNetrum and 3Lines)**

195.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

196.     As majority members and/or managers of Arka, TriNetrum, and 3Lines, and/or as contracting parties with Plaintiff, Individual Defendants, Arka, TriNetrum and 3Lines owed a duty of good faith and fair dealing to Plaintiff.

197.     Individual Defendants, Arka, TriNetrum and 3Lines failed to exercise reasonable care or competence in communicating information to Plaintiff, and/or supplied false information to Plaintiff.

198.     Individual Defendants, Arka, TriNetrum and 3Lines made misrepresentations of fact to Plaintiff which they knew or should have known were false, as detailed in part in Paragraphs 19-20, 24-27, 45-49, 52-54, and 109 herein.

199.     Plaintiff reasonably relied upon the misrepresentations of Individual Defendants, Arka, TriNetrum and 3Lines, and was damaged thereby, in an amount to be determined at trial, in excess of $5.8M.

## COUNT X
### (Conspiracy to Commit Fraud)
### (Against Individual Defendants)

200.    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

201.    Each of the Individual Defendants agreed to defraud Plaintiff by fraudulently inducing Plaintiff to enter into the November 2021 Agreement, with no intention of honoring their obligations thereunder, fraudulently inducing Plaintiff to work for their benefit while plotting to deprive Plaintiff of the fruits of his labor, and fraudulently and unilaterally deciding to reduce Plaintiff's management fees and deprive Plaintiff of his Carried Interest, and wrongfully create a sham "Cause Event" to oust Plaintiff from Arka and steal and de-value his vested and unvested Arka Units.

202.    Each of the Individual Defendants committed overt acts in furtherance of their conspiracy to defraud Plaintiff, including:  (a) fraudulently misrepresenting to Plaintiff that the Fund would have a minimum $30M investment from an anchor group, (b) fraudulently misrepresenting that there would be investors from secure exits from previous funds with good IRRs and MOICs, (c) fraudulently misrepresenting that they would avoid any write-down or write-offs of prior investments, (d) fraudulently misrepresenting a strong deal pipeline, (e) failing to provide Plaintiff with documents promised to Plaintiff, including but not limited to the Unit Incentive Plan, (f) failing to honor Plaintiff's agreed-upon management fee increase to $190,000 annually, (g) publicly announcing that Plaintiff had joined 3Lines as a partner and Chief Operating Officer, without providing Plaintiff with any 3Lines agreement, (h) failing to formally announce Plaintiff's promotion to "General Partner" of the Fund, (i) secretly meeting in March 2023 to drastically change the Fund's focus to SPVs, (j) secretly agreeing in March 2023 to wrongfully terminate Plaintiff, (k) fraudulently concealing their plan from Plaintiff so that Plaintiff continued

to work on their behalf, lending gravitas to the Fund with Plaintiff's substantial connections and reputation, (l) falsely assuring Plaintiff on June 5, 2023 that they would honor the OA and recognized Plaintiff's vested Arka Units, including "250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year," (m) fraudulently depriving Plaintiff of vested and unvested Arka Units and de-valuing Plaintiff's Arka Units, (n) using Plaintiff without compensation to correct mistakes and manage investor relations in connection with other funds, and (o) intentionally attempting to deprive Plaintiff of his Carried Interest in the Fund under the November 2021 Agreement.

203.     Each of the Individual Defendants were motivated to conspire to defraud Plaintiff in order to wrongfully convert millions of dollars from Plaintiff in the form of Plaintiff's Carried Interest in the Fund, vested and unvested Arka Units, unpaid management fees, and at least 3 months of promised severance.

204.     Accordingly, Plaintiff has been damaged by Individual Defendants' conspiracy with one another to defraud Plaintiff. Plaintiff is entitled to recover damages that reasonably flow from Individual Defendants' conspiracy, as well as reasonable attorneys' fees and costs, punitive damages, and such other and further damages reasonably flowing from Individual Defendants' conspiracy, in an amount to be determined at trial, in excess of $5.8M.

## COUNT XI
### (Unjust Enrichment)
### (Against All Defendants)

205.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

206.     Defendants have been unjustly enriched by: (a) withholding management fees owed to Plaintiff, (b) ignoring and/or attempting to terminate Plaintiff's Carried Interest under the November 2021 Agreement, (c) fraudulently clawing back and de-valuing Plaintiff's vested Arka

Units, (d) using Plaintiff without compensation to address problems with other funds, (e) exploiting the added value of Plaintiff's name and reputation in connection with their venture capital team, and (f) unlawfully "terminating" Plaintiff to wrongfully prevent the vesting of Plaintiff's additional Arka Units.

207.     Defendants have been unjustly enriched by Plaintiff's uncompensated work - including remediation of improper accounts, correcting mistakes in reporting, investor relations, portfolio performance data collection, and analysis - for TriNetrum's various funds.

208.     Defendants have been unjustly enriched by failing to formally communicate to investors and prospective investors that Plaintiff is no longer managing or operating the Fund and is not affiliated with 3Lines and is (due to the wrongful ouster) no longer affiliated with Arka.

209.     Defendants have been unjustly enriched by converting Plaintiff's Carried Interest and vested and unvested Arka Units to themselves.

210.     Accordingly, Plaintiff is entitled to recover the amounts by which Defendants have been unjustly enriched, in an amount to be determined at trial, in excess of $5.8M.

## COUNT XII
**(Violation of Conn. Gen. Stat. § 31-72, Pled in the Alternative to Counts IV and V)**
**(Against All Defendants)**

211.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

212.     This Count is pled in the alternative to Counts IV and V herein, and only to the extent that relief cannot be afforded to Plaintiff pursuant to Counts IV and V herein.

213.     As a resident of Connecticut, Plaintiff is entitled to promised and unpaid management fees of $79,166.67.

214.     Defendants violated Conn. Gen. Stat. § 31-72 by failing in bad faith to pay Plaintiff his full agreed-upon management fees since March 2023 and/or by directing 3Lines to not pay

Plaintiff his full agreed-upon management fees since March 2023.

215.     Accordingly, Plaintiff is entitled to damages of twice the full amount of his unpaid management fees ($158,333.34) plus interest thereon pursuant to Conn. Gen. Stat. § 31-265 calculated from the date of May 31, 2023, plus costs and attorneys' fees, pursuant to Conn. Gen. Stat. § 31-72.

**COUNT XIII**
**(Promissory Estoppel)**
**(Pled in the Alternative to Count IV and V)**
**(Against Individual Defendants)**

216.     Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

217.     In the alternative to Counts V and V, Plaintiff alleges that certain of Defendants' promises to Plaintiff were relied upon by Plaintiff to his detriment and should be enforced.

218.     Individual Defendants made the following clear and definite promises to Plaintiff, individually and on behalf of Arka, 3Lines, and TriNetrum, which Individual Defendants could reasonably have expected to induce Plaintiff's reliance: (a) the Fund would have a minimum $30 million investment from an anchor group, (b) secured exits had been made from investments to previous funds with good IRRs and MOICs, (c) they would avoid any write-down or write-offs of prior investments, (d) they had a strong deal pipeline, (e) Plaintiff's management fees would be increased to $190,000, (f) they would "honor" the OA and Plaintiff's vested Units, vesting through the end of 2023, and (g) Plaintiff's Carried Interest would be increased from 10% to 14% after being named General Partner of the Fund.

219.     Plaintiff reasonably relied on the foregoing misrepresentations by working on behalf of the Fund, signing the November 2021 Agreement, traveling to grow the Fund, and using his name, likeness, and reputation (including his co-authored book) to advertise and grow the Fund, including in Connecticut, only to be wrongfully "terminated."

220.    Accordingly, injustice to Plaintiff can only be avoided if Individual Defendants' promises, to the extent that they are not deemed contractual, are enforced, and if Plaintiff is awarded compensation, in an amount to be determined at trial, in excess of $5.8M.

**COUNT XIV**
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a))**
**(Against All Defendants)**

221.    Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

222.    This action is a case of actual controversy, and pursuant to 28 U.S.C. § 2201(a) this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.*

223.    Plaintiff has been and continues to be harmed by Defendants' use of Plaintiff's likeness, name, reputation, and/or email accounts in connection with Defendants' businesses.

224.    Defendants failed to formally notify investors that Plaintiff was no longer operating or managing the Fund, even after repeated requests by Plaintiff, which has hampered Plaintiff's ability to find new opportunities through the network he has cultivated over decades, including in Connecticut.

225.    Plaintiff's entitlement to the Carried Interest under the November 2021 Agreement has not terminated and cannot be terminated by Defendants under the terms of the November 2021 Agreement.

226.    Plaintiff was wrongfully terminated as a Member of Arka.

227.    Plaintiff therefore respectfully requests, in addition to the monetary damages sought herein: (a) a Declaration that Plaintiff has not operated or managed the Fund since May 31, 2023; (b) a Declaration that Plaintiff holds a 14% interest in the Fund's Carry (this requested Declaration shall become moot in the event that accelerated vesting and valuation of the Carried Interest is

calculated in connection with determining Plaintiff's damages); and (c) a Declaration that Plaintiff holds 333 vested Arka Units and is entitled to accelerated vesting of his remainder Arka Units under the OA (this requested Declaration shall become moot in the event that accelerated vesting and valuation of Arka Units is calculated in determining Plaintiff's damages).

**COUNT XV**
**(Permanent Injunction)**
**(Against All Defendants)**

228.    Plaintiff repeats and realleges each of the foregoing Paragraphs as if set forth in full herein.

229.    Plaintiff has been and continues to be irreparably harmed by Defendants' failure to formally notify the Fund's current and prospective investors that Plaintiff is no longer managing or operating the Fund, and/or by Defendants' unauthorized use of Plaintiff's email accounts in communicating with others under the false pretense that the emails originate from Plaintiff.

230.    Plaintiff has been and is being irreparably harmed by not having access to the corporate and/or partnership books and records of 3Lines, Arka, and the Fund, which Plaintiff has requested and are necessary for Plaintiff to prove the claims herein and for the valuation of Plaintiff's damages.

231.    There is no adequate remedy at law to prevent the irreparable harm to Plaintiff caused by Defendants' failure to formally notify the Fund's current and prospective investors that Plaintiff is no longer managing or operating the Fund.

232.    There is no adequate remedy at law to prevent the irreparable harm to Plaintiff caused by Defendants' refusal to provide their corporate books and records to Plaintiff.

233.    Plaintiff respectfully requests that Defendants be permanently enjoined from using Plaintiff's name, likeness, book authorship, or reputation in any marketing materials, including but

not limited to websites, pitches to investors, prospectuses, and private placement memoranda.

234.     Plaintiff respectfully requests that Defendants be permanently enjoined from using Plaintiff's email accounts, including but not limited to Plaintiff's 3Lines account.

235.     Plaintiff respectfully requests that Defendants be ordered by permanent injunction to formally notify investors and potential investors of the Fund – by press release and/or by certified mail - that Plaintiff has not managed or operated the Fund since May 31, 2023.

236.     Plaintiff further respectfully requests that Defendants be ordered by permanent injunction to provide the corporate books and records of 3Lines, the Fund, TriNetrum, and Arka to Plaintiff, to enable Plaintiff to prove the valuation of Plaintiff's Carried Interest and vested and unvested Arka Units, and otherwise prove the claims and damages asserted herein.

237.     Plaintiff finally respectfully requests that Individual Defendants be ordered by permanent injunction to produce to plaintiff all federal tax schedule K-1s and Schedule Cs filed by Kunapuli, Chatterjee and/or Dwivedi from tax years 2021 to the present.

## COUNT XVI
**(Unfair Trade Practices in Violation of Colo. Rev. Stat. § 6-1-101 *et seq.*)**
**(Plead In Alternative to Count I)**
**(Against Individual Defendants, Arka, 3Lines, and TriNetrum)**

238.     Plaintiff repeats and realleges each of the foregoing Paragraphs as if set forth in full herein.

239.     This Count is pled in the alternative to Count I, and alleges unfair trade practices in violation of Colorado's Consumer Protection Act ("CCPA") only to the extent that Connecticut's Unfair Trade Practices Act is determined to not apply to the claims asserted herein.

240.     Defendants' deceptive and fraudulent actions and misrepresentations to Plaintiff, as alleged herein, violate the CCPA that was enacted to punish deceptive trade practices committed by business in dealing with the public, and is to be liberally construed to serve its broad purpose

and scope.

241.   Plaintiff has alleged specific false misrepresentations to Plaintiff and other unfair trade practices and deceptive and unfair conduct by Defendants that caused Plaintiff to be fraudulently induced to work for Defendants, including without compensation, and to put his reputation on the line and obtain investors for Defendants, including:

- Misrepresentation by Individual Defendants and 3Lines and Arka and TriNetrum in November 2021 that the Fund would have a minimum $30 million investment from an anchor group, partially reflected in early presentations to prospective investors and in the PPM: "*an expected $30 million from the overwhelming majority of our current LPs,*" which Plaintiff later discovered was not true;

- Misrepresentation by Individual Defendants, 3Lines, Arka and TriNetrum in November 2021 that investors in previous funds had secure exits with good IRRs and MOICs;

- Misrepresentation by Individual Defendants, 3Lines, Arka and TriNetrum in November 2021 that they would avoid any write-down or write-offs of prior investments, which Plaintiff later discovered did not happen;

- Misrepresentation by Individual Defendants, 3Lines, TriNetrum, and Arka in November 2021 that there was a strong deal pipeline for the Fund, in part reflected in the Fund's later marketing materials stating the Fund would invest in "*a set of new opportunities from our pipeline,*" when there was no new investment for an entire year;

- Misrepresentation in November 2021 that Plaintiff would not be required to meet specific fundraising goals, before Individual Defendants, 3Lines, and Arka "terminated" Plaintiff by falsely alleging on June 28, 2023 that there was "an understanding" that Plaintiff would lead a fund raise of at least $50M;

- Telling Plaintiff (and the public) that Plaintiff had "joined 3Lines as a partner and Chief Operating Officer," without providing Plaintiff with any 3Lines agreements;

- Announcing that Plaintiff had been promoted to "General Partner" of the Fund, when Plaintiff was never legally recognized as "General Partner" and was not on the Fund's investment committee, and Plaintiff was later told by Chatterjee that the promotion to "General Partner" was solely "for marketing purposes";

- Telling Plaintiff that he would be on the "investment committee" when he was promoted to "General Partner," which never happened;

- Defendants' secret meeting in March 2023 where they colluded to change, without

notifying Plaintiff, the core strategy and very nature of the Fund's capital raise and to "terminate" Plaintiff;

- Formation of Advisors on April 14, 2023, just after Defendants secretly decided to oust Plaintiff, upon information and belief formed as a vehicle through which Kunapuli would receive his share of the Fund's Carry through Arka distributions, which monies would in part include funds owed to Plaintiff through Plaintiff's Carried Interest and Arka Units; and

- Assuring Plaintiff on June 5, 2023 that "[r]egardless of the technical issue, we honor the operating agreement, the total units are 10,000 and you have 250 vested in 2022, 83 vested so far in 2023 and 117 will vest by the end of the year," before on June 27, 2023 declaring an unspecified "Cause Event" under the OA and valuing Plaintiff's Units as "negative."

242.    Defendants' aforementioned conduct was undertaken in the course of their trade or business of venture capital finance.

243.    Defendants' aforementioned conduct, including of fraudulently inducing Plaintiff to join their venture capital team with no intention of honoring their promises and contractual obligations to Plaintiff, and intentionally and fraudulently breaching their agreements with Plaintiff, and intentionally and fraudulently frustrating Plaintiff's ability to fundraise, and intentionally and fraudulently using Plaintiff for his contacts and reputation, even after terminating Plaintiff, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

244.    Defendants' aforementioned conduct therefore constitutes unfair or deceptive practices within the meaning of CCPA, in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, and/or is substantially injurious to consumers, competitors, and/or other businesspersons.

245.    Defendants' aforementioned conduct caused substantial injury to Plaintiff that could not reasonably have been avoided and is not outweighed by any countervailing benefit to

consumers, competitors, and/or or other businesspersons.

246.    Accordingly, as a direct and proximate result of Defendants violations of CCPA, Plaintiff has suffered an ascertainable loss of money, in an amount to be determined at trial, in excess of $5.8M.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

1.    Plaintiff's compensatory and consequential damages, in an amount to be determined at trial, in excess of $5,800,000.

2.    Plaintiff's costs and attorneys' fees, including pursuant to Conn. Gen. Stat. § 42 110g(d) and/or Conn. Gen. Stat. § 31-72, in the alternative;

3.    Punitive and/or treble damages against Defendants, including pursuant to Conn. Gen. Stat. § 42-110g(a) and/or Conn. Gen. Stat. § 52-564, in the alternative;

4.    A Declaration, pursuant to 28 U.S.C. § 2201(a), that Plaintiff has neither operated nor managed the Fund since May 31, 2023;

5.    A  Declaration, pursuant to 28 U.S.C. § 2201(a), that Plaintiff holds a 14% (or, alternatively, 10%) Carried Interest in the Fund;

6.    A Declaration, pursuant to 28 U.S.C. § 2201(a), that Plaintiff holds 333 vested Arka Units and is entitled to his additional unvested Units under the terms of the OA;

7.    A permanent injunction enjoining Defendants from the use of Plaintiff's likeness, name, reputation, and email accounts in connection with any of Defendants' existing or future businesses, including in any marketing materials, websites, pitches to investors, prospectuses, and/or private placement memoranda;

8.    A permanent injunction ordering Defendants to notify all current and previous and

prospective investors in the Fund – by press release and/or by certified mail - that Plaintiff has not operated or managed the Fund since May 31, 2023;

9.      A permanent injunction ordering Defendants to produce to Plaintiff all corporate books and records and tax filings belonging to the Fund, Arka, 3Lines, TriNetrum, and/or Advisors from 2021 to the present;

10.     A permanent injunction ordering Kunapuli, Chatterjee, and Dwivedi to produce to Plaintiff all federal tax Schedule K-1s and Schedule Cs filed by Kunapuli, Chatterjee, and/or Dwivedi from the tax years 2021 to the present; and

11.     An order awarding Plaintiff any further legal and equitable relief that the Court deems just and proper.

Plaintiff respectfully demands a jury trial on all claims and issues so triable.


Dated: November 20, 2023
         Stamford, CT

                             **PLAINTIFF,**
                             **Nanda Kuppuswamy**
                             By: /s/ Joseph M. Pastore III
                             Joseph M. Pastore III, Esq. (ct11431)
                             Leanne M. Shofi, Esq. (ct14590)
                             Pastore LLC
                             4 High Ridge Park, Third Floor
                             Stamford, CT 06905
                             Tel: (203) 658-8454
                             Fax: (203) 717-5550
                             jpastore@pastore.net
                             lshofi@pastore.net